DYK, Circuit Judge,
concurring.
I generally join the majority opinion, and agree that the word “employee” cannot reasonably be construed to mean “full-time employee.” My only point of difference is that I think it is necessary to also address the “regularly scheduled” language in § 5546(a).[1] In my view, that language is ambiguous as to whether it refers only to full-time employees or also includes part-time employees. The word “regular” means “normal, standard, correct” in the sense of “undeviating in conformance to a standard set (as by convention, established authority, or a particular group).” Webster’s Third New International Dictionary 1913 (Merriam-Webster 2002) (emphases added); see also Webster’s Unabridged Dictionary 1624 (Random House 2d ed.1998) (defining “regular” as “usual; normal; customary ” (emphases added)). The tenn “full-time” means “employed for or working the amount of time considered customary or standard,” Webster’s Third New International Dictionary at 919 (emphasis added), while the term “part-time” means “employed for or working less than the amount considered customary or standard,” id. at 1648 (emphasis added). See also Webster’s Unabridged Dictionary at 775 (defining “full-time” as “working or oper-ating the customary number of hours in each day, week, or month” (emphasis added)); id. at 1415 (defining “part-time” as “employed to work, used, expected to function, etc., less than the usual or full time ” (emphasis added)). This may suggest that a part-time employee is not “regularly scheduled” because he or she does not work a standard or customary 5-day schedule. However, while the dictionary definitions lend some support to the government’s position, it is not entirely clear from the dictionary definitions that a “regular” schedule excludes a regular “part-time” schedule.
In my view the legislative history of § 5546(a), while also not conclusive, suggests that “regularly scheduled” in § 5546(a) refers only to full-time employees. The Senate Report accompanying the 1966 enactment of the Sunday premium pay statute explained:
This section requires a premium of 25 percent of base pay for any employee *1358 whose regularly scheduled, 5-day work-iveek includes Sunday. The premium will be paid for the entire 8-hour period of service regardless of the numbers of hours which actually occur on Sunday.
S.Rep. No. 89-1187, at 4 (1966), as reprinted in 1966 U.S.C.C.A.N. 2495, 2498 (emphases added). The government points out that this legislative history assumes that a regularly scheduled workweek is a “5-day” workweek.
Since, in my view, the statutory language and legislative history are not determinative, we would normally invoke Chevron deference. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). While OPM has adopted regulations that bar part-time employees from receiving premium pay for Sunday work, those regulations attempt to reach that result by construing “employee” as restricted to full-time employees.[2] The majority correctly points out that the term “employee” is not ambiguous in this respect, and thus not subject to Chevron deference. One might have expected OPM instead to rest its Sunday pay regulation on the construction of the term “regularly scheduled,” which, as noted above, is ambiguous. But OPM chose not to do so, instead construing “regularly scheduled” to include both full-time and part-time employees.[3] Under these circumstances, there is no agency construction of statutory language supporting the denial of premium pay to which we may afford Chevron deference. To the contrary, the regulations define “regularly scheduled” to include part-time employees, and we must defer to such an interpretation under Chevron.
In short, if OPM had adopted a regulation construing a “regularly scheduled” employee in § 5546(a) to mean only a full-time employee, it seems that this construction might pass muster under Chevron. Because OPM has defined “regularly scheduled” to apply to both part-time and full-time employees, there is no authoritative agency construction of the term “regularly scheduled” limiting § 5546(a) to full-time employees.

. The current Sunday premium pay statute applies to "[ajn employee who performs work during a regularly scheduled 8-hour period of service” on a Sunday. 5 U.S.C. § 5546(a) (emphasis added). As originally enacted in 1966, the Sunday premium pay statute provided a premium for "[a]ny regularly scheduled eight-hour period of service” by an employee on a Sunday. Federal Salary and Fringe Benefits Act of 1966, Pub.L. No. 89-504, § 405(c), 80 Slat. 288, 297-98 (1966) (emphasis added).

. OPM's regulations limit Sunday premium pay to full-time employees, stating that "[a] full-time employee is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work (as defined in § 550.103).” 5 C.F.R. § 550.171(a); see also Incentive Awards; Pay and Leave Administration, 60 Fed.Reg. 33,097 (Office of Pers. Mgmt. June 27, 1995).

. OPM has defined “regularly scheduled administrative workweek” as encompassing both full-time and part-time employees. As OPM’s premium pay regulations state:
Regularly scheduled administrative workweek, for a full-time employee, means the period within an administrative workweek, established in accordance with § 610.111 of this chapter, within which the employee is regularly scheduled to work. For a part-time employee, it means the officially prescribed days and hours within an administrative workweek during which the employee is regularly scheduled to work.
5 C.F.R. § 550.103 (emphases added).